# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **TOVE D. ADAMS,** | Case No. 4:19 CV 404 |
| Petitioner, | Judge James Gwin |
| v. | Magistrate Judge James R. Knepp II |
| **WARDEN RONALD ERDOS,** | |
| Respondent. | **REPORT AND RECOMMENDATION** |

## INTRODUCTION

Petitioner Tove D. Adams ("Petitioner"), a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Ronald Erdos, Warden of the Southern Ohio Correctional Facility[1] ("Respondent") filed an Answer (Doc. 12). Petitioner did not file a Reply and the time in which to do so has passed. *See* Doc. 9 (providing 30 days after the Answer is filed for a Reply). The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated June 11, 2019). For the reasons discussed below, the undersigned recommends the Petition be denied.

## FACTUAL BACKGROUND

For the purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, erroneous factual findings by the state court. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524,

---

1. Petitioner has since been transferred to the Northeast Ohio Correctional Center. *See* Doc. 11.

530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Ninth District Court of Appeals made the following factual findings on direct appeal:

{¶ 2} Anthony Coats asked S.C. to attend his son's high school graduation with him. At the time, Adams and S.C. were in a relationship. S.C. had been friends with Anthony Coats for many years, but Adams believed S.C. and Mr. Coats were having an affair. When Mr. Coats dropped S.C. off at home, Adams exited the house, said "[i]s that that motherf * * * r?" as he walked passed S.C., and continued toward Mr. Coats' vehicle with his gun. As Adams approached Mr. Coats' automobile, he fired several shots. Mr. Coats attempted to drive away, but Adams chased after him and fired additional shots at the vehicle, striking Mr. Coats. Adams fled the scene and Mr. Coats died of a gunshot wound.

* * *

{¶ 33} * * * The overwhelming evidence in this case indicates that Adams had strong feelings toward Mr. Coats that included anger and jealousy because he believed Mr. Coats and S.C. were having an affair. S.C. testified that as soon as she returned home from dinner with Mr. Coats, Adams walked past her and asked, "[i]s that that motherf * * * r?" before proceeding to Mr. Coats' automobile and firing three shots. S.C. further stated that as Mr. Coats attempted to drive away, Adams chased the car and continued to shoot at Mr. Coats. Adams then fled the scene and hid the murder weapon at his sister's house. Subsequently, four fired cartridge cases recovered from the scene, a bullet recovered from Mr. Coats' driver's seat, and a bullet jacket recovered from Mr. Coats' body were all determined to have been fired from Adams' weapon. Additionally, a swab of the handled areas for Adams' weapon contained a DNA profile consistent with Adams, S.C., and at least one additional unknown individual. Further, the photographs admitted into evidence show: (1) a shattered front driver's-side window, a shattered-out driver's-side rear "opera" window still intact with a hole in the center, a bullet hole in the top of the trunk, bullet fragments inside the trunk, and a bullet hole in the upper right-hand corner of the back license plate; (2) detective testified that the hole in opera window was "consistent with a bullet going through and striking the headrest of the driver's side headrest, driver's seat;" and (3) the coroner who performed Mr. Coats' autopsy testified that the gunshot entry wound in Mr. Coats' body was located on his back left shoulder and that the bullet travelled "about horizontal" through his body to his upper right back. * * *

*State v. Adams*, 2017 WL 1227037, at *1, 8 (Ohio Ct. App.).

**PROCEDURAL HISTORY**

State Court Conviction

In August 2013, a Lorain County, Ohio grand jury issued an indictment charging Petitioner with one count of aggravated murder in violation of Ohio Revised Code § 2903.01(A) (with firearm and repeat violent offender specifications) (Count 1), one count of murder in violation of Ohio Revised Code § 2903.02(A) (with firearm and repeat violent offender specifications) (Count 2), one count of murder in violation of Ohio Revised Code § 2903.02(B) (with firearm and repeat violent offender specifications) (Count 3), two counts of felonious assault in violation of Ohio Revised Code § 2903.11(A)(2) (each with firearm and repeat violent offender specifications) (Counts 4-5), one count of tampering with evidence in violation of Ohio Revised Code § 2921.12(A)(1) (with a firearm specification) (Count 6), and two counts of having weapons while under disability in violation of Ohio Revised Code § 2923.13(A)(2) and § 2923.13(A)(3) respectively (Counts 7-8). (Ex. 1, Doc. 12-1, at 4-7). Petitioner entered a not guilty plea at arraignment. (Ex. 2, Doc. 12-2, at 8).

Before trial, Petitioner moved to bifurcate the repeat violent offender specifications and try them to the court; the trial court granted the motion. (Tr. Vol. 1, at 18-19, Doc. 12-2, at 19-20). The remaining charges proceeded to jury trial. *See* Tr. Vols. 1-5, Doc. 12-2; *see also* Ex. 3, Doc. 12-1, at 9-20 (jury instructions). During trial, the State dismissed Count 8, the second having weapons under disability charge. *See* Ex. 4, Doc. 12-1, at 21. The jury found Petitioner found Petitioner not guilty as to Count 1 (aggravated murder), and guilty as to Counts 2-7 (two counts of murder, two counts of felonious assault, one count of evidence tampering, and one count of having weapons under disability). *Id.* The jury also found Petitioner guilty of each firearm specification.

*See id.* The trial court found Petitioner guilty of the related repeat violent offender specifications. (Tr. Vol. 5, at 908-10, Doc. 12-2, at 915-17).

The trial court merged the murder convictions (with their attached specifications) and felonious assault convictions (with their attached specifications) (Counts 2-5) for purposes of sentencing; the State elected to proceed on the first murder conviction (Count 2). (Ex. 5, Doc. 12-1, at 36). The trial court sentenced Petitioner to fifteen years to life on Count 2 (murder), with an additional consecutive three years for the firearm specification, and ten years for the repeat violent offender specification. *Id.* at 37. It further sentenced Petitioner to three years on Count 6 (evidence tampering), and a consecutive three years on the attached firearm specification. *Id.* Finally, the court sentenced Petitioner to three years on Count 7 (having weapons under disability), and noted all sentences to be consecutive, resulting in an aggregate sentence of 34 years to life. *Id.* at 38. The trial court journalized the sentencing entry on May 27, 2015. *See id.* at 35.

Direct Appeal[2]

The trial court appointed Petitioner counsel for his direct appeal (Ex. 15, Doc. 12-1, at 61), and counsel filed a timely notice of appeal (Ex. 16, Doc. 12-1, at 62). In his appellate brief, Petitioner raised seven assignments of error:

1.  Tove Adams was deprived his constitutional right to a fair trial before an unbiased jury by the introduction of improper other acts evidence by the State

---

2. Initially, the trial court appointed Petitioner counsel for his direct appeal (Ex. 6, Doc. 12-1, at 39), and on June 18, 2015, Petitioner, through counsel, filed a timely notice of appeal (Ex. 7, Doc. 12-1, at 40). After initial review, the appellate court ordered briefing from the parties regarding "whether a conviction on the repeat violent offender specifications is necessary to enter a final judgment of conviction". (Ex. 8, Doc. 12-1, at 44). The parties did so (Exs. 9-10, Doc. 12-1, at 46-52), and on August 3, 2015, the appellate court determined the trial court's judgment of conviction was not a final appealable order. (Ex. 11, Doc. 12-1, at 53). It therefore dismissed the appeal for lack of jurisdiction. *See id.* at 53-54. The trial court held a video resentencing hearing (*see* Ex. 12, Doc. 12-1, at 55), and corrected the verdict entry to reflect that the trial court found Petitioner guilty of the repeat violent offender specifications (Ex. 13, Doc. 12-1, at 56), and corrected the May 27, 2015 sentencing journal entry to reflect the same (Ex. 14, Doc. 12-1, at 57).

in violation of U.S. Constitution Amendments V, VI, and XVI; Ohio Constitution Article I Sections 10 and 5; and Evidence Rule 404.

2. Tove Adams was deprived of his constitutional right to a fair trial before an unbiased jury when the court failed to instruct the jury on the limited purpose for which the court admitted 404(B) evidence in violation of U.S. Constitution Amendments V, VI, and XVI; Ohio Constitution Article I Sections 10 and 5; and Evidence Rule 404.

3. The court erred and deprived Defendant of his constitutional right to a fair trial before an unbiased jury when it disallowed cross examination of Det. Larry Barbee regarding statements made to the detective by Sara Colon in contravention of Evid. R. 613 and in violation of U.S. Constitution Amendments V, VI, and XVI; Ohio Constitution Article I Sections 10 and 5.

4. The court violated Defendant's rights under U.S. Constitution Amendments V, VI, and XIV; the Ohio Constitution Article I, Section 10 and Ohio hearsay law when it allowed improper testimony.

5. The prosecution violated Mr. Adams' constitutional rights under Article I, Section 10 of the Ohio Constitution, the Fifth Amendment to the United States Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution when it engaged in improper argument that mis-stated law and misled the jury.

6. Defendant was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.

7. The cumulative impact of errors reflected in this record amounted to a denial of due process and a fair trial.

(Ex. 17, Doc. 12-1, at 67-117). The State filed a responsive brief (Ex. 18, Doc. 12-1, at 124-62), and on March 31, 2017, the state appellate court overruled Petitioner's assignments of error and affirmed his conviction and sentence. (Ex. 19, Doc. 12-1, at 167-85); *Adams*, 2017 WL 1227037.

On August 22, 2017, Petitioner filed an untimely *pro se* notice of appeal to the Ohio Supreme Court (Ex. 20, Doc. 12-1, at 186-87), and motion for a delayed appeal (Ex. 21, Doc. 12-1, at 189-92). The Ohio Supreme Court granted Petitioner leave to file the delayed appeal. (Ex. 22,

Doc. 12-1, at 216). Petitioner then raised seven assignments of error in his memorandum in support of jurisdiction:

1. The Ohio Constitution guarantee[s] a fair and impartial fact finder, one free from outside considerations.

2. The court failed to instruct the jury on the limited purpose for which the court admitted 404(b) evidence in violation [sic].

3. Deprived Defendant of his constitutional right to a fair trial when it disallowed cross examination of Det. Barbee regarding statements made by S.C.

4. "Hearsay Law"[.] The trial court erred when it permitted "Jason Lovejoy" to testify about what he allegedly heard.

5. Due Process Clause improper argument that misstated law and misle[]d the jury.

6. Effective assistance of counsel.

7. The cumulative impact of errors amounted to a denial of due process and a fair trial.

(Ex. 23, Doc. 12-1, at 217-41). The State moved to strike Petitioner's brief (Ex. 24, Doc. 12-1, at 264-68), and later filed a responsive memorandum (Ex. 25, Doc. 12-1, at 269-90). On January 31, 2018, the Ohio Supreme Court declined to accept jurisdiction of Petitioner's appeal pursuant to Ohio Supreme Court Practice Rule 7.08(B)(4); it further denied the State's motion to strike as moot. (Ex. 26, Doc. 12-1, at 291).

Application to Reopen

On March 26, 2019, Petitioner filed a *pro se* motion for leave to file a delayed Ohio Appellate Rule 26(B) application to reopen his direct appeal. (Ex. 27, Doc. 12-1, at 292-307). Petitioner cited his inability to obtain trial transcripts as the reason for his delayed filing. *Id.* at 296 ("showing of good cause for untimely filing"). In his motion, Petitioner asserted his appellate counsel was ineffective for failing to raise four claims on direct appeal:

1. Tove Adams was deprived his constitutional right to a fair trial in violation of U.S. Constitution Amendment VI and XIV[.] Constitutional challenges to jury selection procedures.

2. Tove Adams was denied his constitutional to a fair trial in violation[] of U.S. Constitution Amendment V and XIV. Government's constitutional disclosure duties.

3. Tove Adams was deprived his constitutional right to a fair trial in violation of U.S. Constitution Amendment VI and XIV[.] Contamination by extraneous influences.

4. Tove Adams was deprived his constitutional right to a fair trial when the court failed to instruct the jury on the affirmative defense in violation of the Constitution Amendments VI and XIV Ohio Constitution.

*Id.* at 298-301. The State did not file a responsive brief and on May 28, 2019, the appellate court found Petitioner had not shown good cause for his filing delay and therefore denied his application for reopening as untimely. (Ex. 28, Doc. 12-1, at 310).

### FEDERAL HABEAS CORPUS

Petitioner raises four grounds for relief in his Petition before this Court:

**GROUND ONE:** The prosecution violated constitutional rights under Article I Section 10, the Fifth Amendment, and the Due Process Clause of the 14th Amendment when it engaged in improper argument that mis-stated the law and misle[]d the jury.

**Supporting facts:** Counsel for the State told the jury: But even to prevail on self-defense, you have to believe Defendant's version of events and the State submits it[']s not credible . Here one witness out of all the witnesses put on the stand that has a motive to lie[.] [N]one of the other witness[es] have a motive to lie. Later in her argument prosecutor again opined as to who was right and who was wron[g.] Sara Colon['s] version of events makes sense[.] [S]he didn't have a motive to lie.

**GROUND TWO:** Defendant was denied effective assistance of counsel[.] Violation of the Sixth and Fourteenth Amendments of the Ohio Constitution.

**Supporting facts:** Counsel should have objected when no such instruction was given. Counsel should have challenged the inappropriate arguments presented by the prosecuting attorney in her closing arguments. The failure to request a limiting instruction, and not objecting to an obviously flawed jury charge combined plainly show that there was no adversarial process in this trial. Improper argument by prosecution prejudice[d] the jury against the Defendant with the sheer weight of negativity. Counsel['s] failure to act left the accused without representation.

**GROUND THREE:** The court deprived Defendant of a fair trial when it disallowed cross-examination of Det. Barbee regarding statements made by Sara Colon.

**Supporting facts:** Sara Colon was confronted with the fact that her trial testimony conflicted with previous statements she provided to police. If a witness claims a lack of memory or lack of knowledge about events described in a prior statement[,] the prior statement is considered inconsistent and is therefore admissible. Furthermore[,] the officer['s] testimony also proved that the State witness was not truthful in her testimony.

**GROUND FOUR:** The cumulative impact of errors reflected in the record amounted to a denial of Due Process and a fair trial.

**Supporting facts:** The doctrine of cumulative error provides that a conviction will be reversed when the effect of multiple errors in a trial deprived a Defendant of a fair trial. Errors plagued these proceedings and the conviction should be reversed and the case remanded for further proceedings. The state lacked evidence in the [sic] as well as withheld evidence from the Defendant and had the evidence been available for Defendant the outcome would [have] been different.

(Doc. 1, at 5, 7, 8-10); *see also* Doc. 1, at 16-24 (memorandum in support).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and

quotation omitted). An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### DISCUSSION

In his Answer, Respondent asserts Ground One is procedurally defaulted and fails on the merits; Ground Two fails on the merits; Ground Three is partially procedurally defaulted and fails on the merits; and Ground Four is non-cognizable. For the reasons discussed below, the undersigned recommends the Petition be denied in its entirety.

Grounds One and Three – Procedurally Default

In Ground One, Petitioner alleges prosecutorial misconduct. In Ground Three, Petitioner argues a Confrontation Clause violation. Respondent asserts each of these grounds is (at least in part) procedurally defaulted.

Petitioners must exhaust state court remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied when a petitioner has given "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The doctrine of exhaustion "requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also Williams v. Wolfenberger*, 513 F. App'x 466, 468 (6th Cir. 2013).

A petitioner can procedurally default a claim in two ways. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, he may fail "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* The Sixth Circuit applies a four-part test to determine whether a claim has been procedurally defaulted in this way: 1) whether there is a state procedural rule applicable to the petitioner's claim, with which he has failed to comply; 2) whether the state courts actually enforced the state procedural sanction; 3) whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim; and 4) if prongs one through three are satisfied, whether the petitioner has demonstrated cause for his failure to comply and actual prejudice resulting from the constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009). Second, a petitioner may default by failing "to raise a

claim in state court, and pursue that claim through the state's ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (internal citations and quotation marks omitted); *see also Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004) ("A federal court is also barred from hearing issues that could have been raised in the state courts, but were not[.]").

*Ground One*

In Ground One, Petitioner contends the prosecutor in his trial committed misconduct in closing argument by vouching for witnesses and making a false statement regarding the number of bullet fragments found in the victim that could be associated with the gun. *See* Doc. 1, at 5, 16-20. Petitioner raised this claim on direct appeal, but raised it as plain error, as trial counsel did not object to the allegedly improper statements. *See* Ex. 17, Doc. 12-1, at 105-11. The state appellate court found that "[a] review of the record shows that Adams failed to object to the alleged acts of prosecutorial misconduct" and "'[w]hen the defendant fails to object to the purported acts of prosecutorial misconduct, he waives all but plain error.'" *Adams*, 2017 WL 1227037, at *7 (quoting *State v. Chapman*, 2008 WL 834423, at *4 (Ohio Ct. App)).

Ohio's contemporaneous objection rule is an adequate and independent state law ground on which to preclude federal habeas relief. *Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir. 2004); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). And a state court's review for plain error only constitutes an enforcement of the procedural default. *See Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007) (citing *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) (plain error review does not constitute a waiver of procedural default)). Ground One – prosecutorial misconduct – is thus procedurally defaulted.

Petitioner may still secure review of the merits of this claim if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the alleged

constitutional violation. *See Coleman v. Thompson*, 501 U.S. 722, 753 n.1 (1991). As cause, Petitioner asserts he failed to exhaust Ground One because "[t]he State failed to provide [him] with the transcript of [his] case . . . which le[ft] [him] without a proper way to defend [him]self from the errors in [his] case." (Doc. 1, at 5). However, this assertion does not speak to the default at issue – the lack of a contemporaneous objection.

Moreover, Petitioner may not rely on an assertion of ineffective assistance of trial counsel to overcome the default. A valid claim of ineffective assistance of counsel may serve as cause to overcome a procedural default, if that ineffective assistance claim is itself properly preserved. *Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000); *see also Girts*, 501 F.3d at 757-58 (if failure to object amounts to ineffective assistance of counsel that prejudiced defendant, that may establish cause and prejudice to excuse a habeas petitioner's procedural default). As discussed below with respect to Ground Two, however, the state court's finding – that counsel was not ineffective for failing to object – is not unreasonable. Therefore, it also cannot serve as cause to overcome Petitioner's default of Ground One here.

Further, even if the Court were to reach the merits of Petitioner's prosecutorial misconduct claim, Petitioner would not be entitled to relief because the state court's plain error analysis was not an unreasonable application of federal law. The state court set forth the relevant law:

> {¶ 31} "The prosecutor is given considerable latitude in closing arguments." *State v. Reed*, 9th Dist. Wayne No. 12CA0051, 2013–Ohio–3970, ¶ 58. "A prosecutor may comment upon the testimony of witnesses and suggest the conclusions to be drawn." *State v. Elder*, 9th Dist. Summit Nos. 25217, 25259, 2011–Ohio–294, ¶ 22. "The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights." *Diar*, 120 Ohio St.3d 460, 2008–Ohio–6266 at ¶ 140. "[T]he touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.' " *Id.*, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982). Further, "[t]his Court has stated that 'it is not prosecutorial misconduct to characterize a witness as a liar * * * if the evidence reasonably supports the characterization.' " *State v. Novotny*, 9th

Dist. Summit No. 26526, 2013–Ohio–2321, ¶ 20, quoting *Akron v. McGuire*, 9th
Dist. Summit No. 24638, 2009–Ohio–4661, ¶ 13.

* * *

* * * "[T]he issue is whether but for the prosecutor's misconduct the verdict would
have been otherwise." *State v. Johnson*, 46 Ohio St.3d 96, 102 (1989). Accordingly,
"we must review the prosecutor's 'closing argument in its entirety to determine
whether prejudicial error occurred.' " *State v. Thompson*, 141 Ohio St.3d 254,
2014–Ohio–4751, ¶ 203, quoting *State v. Treesh*, 90 Ohio St.3d 460, 466 (2001).
Nevertheless, "We will not deem a trial unfair if, in the context of the entire trial, it
appears beyond a reasonable doubt that the jury would have found the defendant
guilty even without the improper comments." *State v. LaMar*, 95 Ohio St.3d 181,
2002–Ohio–2128, ¶ 121.

{¶ 33} Assuming without deciding that the prosecutor's statements were improper,
we determine that they did not prejudicially affect Adams' substantial rights. A
review of the record shows that these statements "did not permeate the state's
argument" so as to deny Adams a fair trial. *Treesh* at 468. Moreover, Adams is
unable to show that but for those comments, the outcome of his trial would have
been different. The overwhelming evidence in this case indicates that Adams had
strong feelings toward Mr. Coats that included anger and jealousy because he
believed Mr. Coats and S.C. were having an affair. S.C. testified that as soon as she
returned home from dinner with Mr. Coats, Adams walked past her and asked, "[i]s
that that motherf * * * r?" before proceeding to Mr. Coats' automobile and firing
three shots. S.C. further stated that as Mr. Coats attempted to drive away, Adams
chased the car and continued to shoot at Mr. Coats. Adams then fled the scene and
hid the murder weapon at his sister's house. Subsequently, four fired cartridge cases
recovered from the scene, a bullet recovered from Mr. Coats' driver's seat, and a
bullet jacket recovered from Mr. Coats' body were all determined to have been
fired from Adams' weapon. Additionally, a swab of the handled areas for Adams'
weapon contained a DNA profile consistent with Adams, S.C., and at least one
additional unknown individual. Further, the photographs admitted into evidence
show: (1) a shattered front driver's-side window, a shattered-out driver's-side rear
"opera" window still intact with a hole in the center, a bullet hole in the top of the
trunk, bullet fragments inside the trunk, and a bullet hole in the upper right-hand
corner of the back license plate; (2) detective testified that the hole in opera window
was "consistent with a bullet going through and striking the headrest of the driver's
side headrest, driver's seat;" and (3) the coroner who performed Mr. Coats' autopsy
testified that the gunshot entry wound in Mr. Coats' body was located on his back
left shoulder and that the bullet travelled "about horizontal" through his body to his
upper right back. Accordingly, in the context of the entire trial, it is clear beyond a
reasonable doubt that the jury would have found Adams guilty even without the
alleged improper comments by the prosecutor during closing statements. *See La
Mar* at ¶ 121 (stating that a trial will not be deemed unfair if, "in the context of the
entire trial, it appears beyond a reasonable doubt that the jury would have found the
defendant guilty even without the improper comments.")

{¶ 34} Therefore, we conclude that the failure to exclude the challenged statements did not amount to plain error and we overrule Adams' fifth assignment of error.

*Adams*, 2017 WL 1227037, at *7-8.

In a habeas corpus action, a petitioner must do more than just show erroneous prosecutorial conduct in order to be entitled to relief. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986). There is no standalone right to be free from any "prosecutorial misconduct" in the United States Constitution. Rather, the right sounds in due process. "The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)) (internal quotations omitted). "[T]he remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error." *United States v. Young*, 470 U.S. 1, 12 (1985).

On direct appeal of criminal cases, the Sixth Circuit "has employed its own . . . test to determine whether prosecutorial misconduct require[s] a new trial." *Gumm v. Mitchell*, 775 F.3d 345, 381 (6th Cir. 2014) (internal quotations and citations omitted). However, the Sixth Circuit has also recognized that its habeas "review of alleged prosecutorial misconduct is 'the narrow one of due process, and not the broad exercise of supervisory power that [it] would possess in regard to [its] own trial court.'" *Id.* (quoting *Donnelly*, 416 U.S. at 642). The Supreme Court explained "the *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, on habeas review under AEDPA, courts "must apply the 'highly generalized standard for evaluating [such claims] set forth in *Darden*' and

its progeny, not [the Sixth Circuit's] own four-factor test." *Gumm*, 775 F.3d at 378 (quoting *Parker*, 567 U.S. at 48); *see also Ross v. Pineda*, 549 F. App'x 444, 449 (6th Cir. 2013).

It is improper for a prosecutor to express his personal opinions as to a witness's credibility. *United States v. Young*, 470 U.S. 1, 9-10 (1985); *Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir. 2005). Such statements are improper because they can convey the impression that the prosecutor has evidence not presented to the jury that supports the charges against the defendant, and because the prosecutor's opinion may induce the jury to trust the government's judgment rather than its own. *Young*, 470 U.S. at 18-19; *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008). The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was expressing a personal belief in the witness' credibility. *United States v. Causey*, 834 F.2d 1277, 1283 (6th Cir. 1987). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999) (internal citations omitted). Even on direct appeal from a federal conviction, the Sixth Circuit has held that, to constitute reversible error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey*, 287 F.3d 422, 433 (6th Cir. 2002). Further, even if statements are improper, "the Sixth Circuit has recognized that improper vouching is rarely sufficient to be afforded habeas relief." *Skidmore v. Kelly*, 2012 WL 5197251, at *4 (N.D. Ohio) (citing *Byrd v. Collins*, 209 F.3d 486, 537 (6th Cir. 2000) ( "We have not discovered, nor have the parties directed us, to any cases in which we have granted habeas relief on the basis of improper vouching.") (collecting cases)).

The state court decision finding Petitioner had not shown the prosecutor's comments violated his due process right to a fair trial was not contrary to, or an unreasonable application of, clearly established federal law. First, as to the bullet fragments, Petitioner argues that although an Ohio Bureau of Criminal Investigation forensic scientist testified that only one bullet fragment removed from the victim could be associated with the gun at issue (whereas a second was not identifiable), the prosecutor stated in closing argument that two fragments came from that gun. But beyond a general contention that this argument "served no purpose but to prejudice the accused and improperly invoked an emotional revulsion from the jury" (Doc. 1, at 19-20), Petitioner has not demonstrated prejudice from the alleged misstatement. In the context of the evidence presented at trial, it is not clear how an incorrect statement that two, rather than only one, of the bullet fragments was associated with the gun was particularly significant. Petitioner has not shown that this statement "so infected the trial with unfairness as to make the resulting conviction a denial of due process" *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 643), and much less shown that the state court's decision so finding was unreasonable. Second, as to vouching, Petitioner argues that the prosecutor argued Petitioner's version of the events was "not credible" and "opined as to who was right and wrong". (Doc. 1, at 18). Having reviewed the prosecutor's entire closing argument (Tr. Vol. 4, at 783-801, 826-36, Doc. 12-1, at 789-807, 832-42), the undersigned again cannot conclude that these statements – even assuming them to be improper – "so infected the trial with unfairness as to make the resulting conviction a denial of due process" *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 643). Therefore, even if not defaulted, Ground One would fail on the merits under AEDPA review.

*Ground Three*

In Ground Three, Petitioner argues he was denied a fair trial when the court disallowed cross-examination of Detective Barbee regarding prior statements made by Sara Colon that were inconsistent with her trial testimony. (Doc. 1, at 8-9, 21-23). Petitioner attempted to raise this argument on direct appeal. *See* Ex. 17, Doc. 12-1, at 99-102.[3] However, the state appellate court found Petitioner had not properly preserved a portion of this argument:

> {¶ 16} In his third assignment of error, Adams contends that the trial court erred when it denied him the ability to cross-examine a detective regarding statements that S.C. made to him that were inconsistent with her trial testimony. We disagree.
>
> {¶ 17} A trial court's decision regarding the admissibility of evidence will not be overturned absent a clear abuse of discretion and material prejudice to the defendant. *State v. Sales*, 9th Dist. Summit No. 25036, 2011–Ohio–2505, ¶ 22. An abuse of discretion denotes that the trial court's determination was unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d 217 at 219 (1983).
>
> {¶ 18} Evid.R. 613(B) governs the admissibility of extrinsic evidence regarding a witness's prior inconsistent statement. That rule allows for the introduction of such evidence when both of the following apply:
>
>> (1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;
>>
>> (2) The subject matter of the statement is one of the following:

---

3. Preliminarily, the undersigned notes that although Petitioner cited the federal constitution in his brief heading (Ex. 17, Doc. 12-1, at 99), his argument to the state court focused on Ohio Evidence Rule 613 (Ex. 17, Doc. 12-1, at 100-02). To the extent Petitioner argued the trial court abused its discretion, such a claim is not cognizable on federal habeas review. *See Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) ("[A] state trial court's alleged abuse of discretion, without more, is not a constitutional violation."). However, in addition to citing the federal constitution in his brief heading, in closing, Petitioner argued that the exclusion of the evidence resulted in him being denied his "fundamental right to challenge his accusers", implicating the Confrontation Clause. As such, the undersigned finds the claim was fairly presented to the state courts as a federal constitutional claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

(a) A fact that is of consequence to the determination of the action other than the credibility of a witness;
(b) A fact that may be shown by extrinsic evidence under Evid.R. 608(A), 609, 616(A), or 616(B);
(c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence.

Evid.R. 613(B)(1). " '[I]f a witness admits making the conflicting statement, then extrinsic evidence of the prior statement is not admissible.' " *Sales* at ¶ 25, quoting *State v. Mulvey*, 7th Dist. Belmont No. 08 BE 31, 2009–Ohio–6756, ¶ 68. However, several appellate courts have recognized that if the witness states she cannot remember the prior statement, a lack of recollection is treated the same as a denial, and the use of extrinsic impeachment evidence is permitted. *See State v. Reed*, 2d Dist. Montgomery No. 19674, 2003–Ohio–6536, ¶ 30; *State v. Allen*, 5th Dist. Stark No. 2012CA00196, 2013–Ohio–3715, ¶ 11; *State v. Lemons*, 11th Dist. Trumbull No. 2009–T–0032, 2010–Ohio–3807, ¶ 38–40.

{¶ 19} Nonetheless, even assuming that Adams has met the foundation requirements of Evid.R. 613(B)(1), S.C.'s inconsistent statements would only be admissible if they met the additional criteria outlined in Evid.R. 613(B)(2). In this case, S.C. testified and was subject to cross-examination. A review of the record shows that Adams' trial counsel attempted to challenge S.C.'s credibility based on statements she made to police during the investigation of this case that trial counsel claimed were inconsistent with her testimony at trial. The specific statements Adams' trial counsel attempted to question S.C. about were: (1) the direction Mr. Coats' automobile was facing at the time of the incident; (2) whether Mr. Coats' automobile pulled forward or backed away from the shooting; (3) whether Adams uttered a statement prior to the shooting or remained silent; (4) whether the driver's window of Mr. Coats' automobile was rolled up or down at the time of the shooting; and (5) whether all shots were fired at Mr. Coats' automobile or if one was fired at S.C. However, when given the opportunity to admit or deny the allegedly inconsistent statements she made to the detective, S.C. stated that she did not remember much of the interview because it had taken place just hours after Mr. Coats' murder. Adams' trial counsel subsequently attempted to refresh S.C.'s recollection of what she told the detective by giving her a copy of her statement to review. Nevertheless, S.C. stated that reviewing her statement did not refresh her recollection as to what she said to the detective.

{¶ 20} Consequently, Adams' trial counsel attempted to elicit testimony from the detective regarding S.C.'s allegedly inconsistent prior statements regarding how Mr. Coats' automobile was parked at the time of the incident and whether or not Mr. Coats backed out of the driveway. Adams' trial counsel argued that the statements were necessary to impeach S.C. However, upon objection by the prosecution, the trial court determined that even if the statements were inconsistent, Adams was unable to show that the evidence he sought was a fact of consequence

in the case. *See* Evid.R. 613(B)(2)(a). Specifically, the trial court determined that Adams had not presented any evidence explaining why backing out of a driveway or in what direction the automobile was headed was a fact of consequence "given what the angles were of the bullets in this case."

{¶ 21} Adams argues on appeal that the trial court erred in this determination because the extrinsic evidence that would be presented by admitting the allegedly inconsistent statements would be important to the jury when determining whether Adams wanted to kill Mr. Coats, if Adams took action toward killing Mr. Coats, and if Adams was acting in self-defense. Initially, we note that a review of the record shows that although Adams proffered as areas of potential questioning of the detective: (1) whether S.C. stated that Adams uttered a statement prior to the shooting; (2) whether S.C. stated that the driver's window of Mr. Coats' automobile was rolled up or down; and (3) whether S.C. stated all shots were fired at Mr. Coats' automobile or if one was fired at S.C., Adams did not attempt to elicit testimony from the detective regarding those topics. At the time of the proffer, the trial court recognized that those issues were not raised during the prosecution's case-in-chief and stated that it would allow Adams to call the detective during the defense's case-in-chief, as if on cross-examination, to explore certain limited areas if he was able to convince the court that it had made a mistake by not allowing certain questions. However, a review of the record shows that trial counsel did not assert any further argument on those points. Therefore, we decline to address the merits of Adams' argument since he did not preserve those issues for appeal. *See State v. Jacobs*, 9th Dist. Summit No. 27545, 2015–Ohio–4353, ¶ 33 ("This Court has repeatedly noted that it will not sua sponte fashion an unraised plain error argument and then address it.")

*Adams*, 2017 WL 1227037, at *4-5.

As noted above, Ohio's contemporaneous objection rule is an adequate and independent state law ground. *See Williams*, 380 F.3d at 968; *Hinkle*, 271 F.3d at 244. And the state appellate court enforced that rule here – "[A] review of the record shows that trial counsel did not assert any further argument on those points. Therefore, we decline to address the merits of Adams' argument since he did not preserve those issues for appeal." *Adams*, 2017 WL 1227037, at *4-5. Petitioner has not shown this factual determination (that counsel failed to argue further) to be incorrect by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Moore*, 708 F.3d at 775.

Petitioner has also not shown cause or prejudice to overcome this particular default. He again cites the state court's failure to provide him with transcripts (Doc. 1, at 9), but as with Ground

One, this assertion of cause does not speak to the default – lack of a contemporaneous argument/objection – at issue here. Petitioner also cannot assert ineffective assistance of trial counsel (for failure to preserve the issue) to overcome this claim because he did not raise such a claim to the state courts. *See Edwards*, 529 U.S. at 451-53.

The state court went on to address a portion of Petitioner's claim on the merits:

{¶ 22} We now consider whether the trial court abused its discretion when it determined that Adams failed to present any evidence demonstrating how the issue of whether Mr. Coat's backed out of the driveway and in what direction Mr. Coats' automobile was headed was a fact of consequence "based upon the evidence that [was] heard" and "given what the angles were of the bullets in this case." Adams argued in the court below that Mr. Coats' operation of the automobile was a fact of consequence because it "created a danger" to Adams. However, Adams did not elaborate in what way it created a danger. A review of the record shows that the following evidence was heard prior to the trial court's determination: (1) S.C. stated that Adams would get angry whenever she mentioned Mr. Coats; (2) S.C. stated that Adams did not believe that she and Mr. Coats were just friends and that Adams had threatened to hurt Mr. Coats; (3) S.C. stated that after an argument concerning Mr. Coats, Adams had choked her; and (4) another witness, J.L., testified that about an hour and a half to two hours before the shooting, Adams told him he was having "girl troubles" and that "he had a pipe and he wasn't afraid delivering out." J.L. understood this to mean that Adams had a gun and wasn't afraid to use it.

{¶ 23} Although the trial court did not specify what the angles of the bullets were, a review of the record shows: (1) the photographs admitted into evidence reveal a shattered front driver's-side window, a shattered-out driver's-side rear "opera" window still intact with a hole in the center, a bullet hole in the top of the trunk, bullet fragments inside the trunk, and a bullet hole in the upper right-hand corner of the back license plate; (2) a detective testified that the hole in opera window was "consistent with a bullet going through and striking the headrest of the driver's side headrest, driver's seat;" and (3) the coroner who performed Mr. Coats' autopsy testified that the gunshot entry wound in Mr. Coats' body was located on his back left shoulder and that the bullet travelled "about horizontal" through his body to his upper right back. As such, it was reasonable for the trial court to infer from the circumstantial evidence that the angle the bullets were shot came from the left-side and rear of the automobile.

{¶ 24} Therefore, in light of the testimony and evidence presented at trial, we cannot conclude that the trial court's determination was unreasonable, arbitrary, or unconscionable.

*Adams*, 2017 WL 1227037, at *4-5.

Although the appellate court did not cite federal law, this is of no consequence. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding these pitfalls does not require citation of our cases—indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.") (emphasis in original). Petitioner argues, in essence, that his right to confront Sara Colon with extrinsic evidence of her prior inconsistent statements through Detective Barbee violated his right to confront Colon. (Doc. 1, at 21-23).

The Sixth Amendment Confrontation Clause guarantees the accused the right to cross examine adverse witnesses to uncover possible biases and expose the witness's motivation in testifying. *See Davis v. Alaska*, 415 U.S. 308, 315-16 (1974). However, the Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, that the defendant may wish. *United States v. Owens*, 484 U.S. 554, 559 (1988). Trial judges retain wide latitude to impose reasonable limits cross-examination based on concerns about, *inter alia*, harassment, prejudice, confusion, or interrogation that is repetitive or only marginally relevant. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). A state trial court "may circumscribe cross-examination if the party is unable to lay a proper evidentiary framework". *DiBenedetto v. Hall*, 272 F.3d 1, 11 (1st Cir. 2001). "Requiring a defendant to lay a foundation for the admissibility of certain evidence does not violate the Confrontation Clause." *Farley v. Lafler*, 2005 WL 2769001, at *5 (E.D. Mich.) (citing *Dell v. Straub*, 194 F. Supp. 2d 629, 644 (E.D. Mich. 2002) (citing *Reddick v. Haws*, 120 F.3d 714, 717 (7th Cir. 1997))), *aff'd*, 193 F. App'x 543 (6th Cir. 2006). The Supreme Court "has never held—or even suggested—that longstanding rules restricting the use of specific instances and extrinsic evidence to impeach a witness's credibility pose constitutional problems. No federal court of appeals has done so either." *Hogan v. Hanks*, 97 F.3d 189, 191 (7th Cir. 1996). Moreover, in

*Harrington v. Jackson*, the Sixth Circuit observed that "[t]he Supreme Court has not recognized the sweep of the Confrontation Clause to extend beyond guaranteeing the criminal defendant's rights to physically confront and cross-examine adverse witnesses to encompass the right to impeach an adverse witness by putting on a third-party witness." 1 F. App'x 367, 370 (6th Cir. 2001). Therefore, the Sixth Circuit later observed:

> If a defendant is not entitled under the Confrontation Clause to put on a third party witness to impeach the testimony of another witness, it stands to reason that he is similarly not entitled to seek to impeach the primary government witness through cross-examination of a different government witness, with what amounts to extrinsic evidence of the primary witness's credibility.

*Farley*, 193 F. App'x at 547 (6th Cir. 2006). Finally, "Confrontation Clause claims are subject to harmless-error analysis" in habeas proceedings. *Vasquez v. Jones*, 496 F.3d 564, 574 (6th Cir. 2007) (citing *Van Arsdall,* 475 U.S. at 684; *Chapman v. California,* 386 U.S. 18, 21–22, (1967)).

Given the above, the undersigned finds Petitioner has not demonstrated that the trial court's denial of his attempt to use extrinsic evidence of Colon's prior inconsistent statements to impeach her – because, it found, he had not demonstrated that the testimony he wished to impeach "was a fact of consequence", *Adams*, 2017 WL 1227037, at *6 – was contrary to, or an unreasonable application of federal Confrontation Clause law. *See Farley*, 2005 WL 2769001, at *5, *Hogan*, 97 F.3d at 191. Moreover, even assuming error *arguendo*, the undersigned agrees with Respondent that such error would be harmless. *See Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) (standard is whether the error "had substantial and injurious effect or influence in determining the jury's verdict") (internal quotation omitted). Petitioner's counsel was able to cross-examine both Colon (Tr. Vol. 2, at 232-309, 335-37, Doc. 12-2, at 236-313, 339-41) and Detective Barbee (Tr. Vol. 3, at 577-636, Doc. 12-2, at 582-641). Moreover, Petitioner's trial counsel pointed to the

inconsistencies in Colon's testimony (Tr. Vol. 4, at 807-25, Doc. 12-2, at 813-31). For example, counsel argued in closing:

> When I attempted to cross-examine her on various things, you saw how she was. I pointed out inconsistencies of what she said here in court, and what she told Detective Barbee on June the 3rd, what she told me in my office on June the 20th, and what she told Detective Barbee on July the 9th.
>
> I confronted her with a number of inconsistencies, you can recall that.
>
> * * *
>
> I pointed out another inconsistency, that [she] told Detective Barbee the car was in the driveway, you're telling us it was in the street facing the river.
> Again, her reaction. "I didn't say that." Or, "I don't remember saying that." Or, "I was traumatized or something like that."
>
> * * *
>
> I asked her about her statement to Barbee that Tony had come around. She had seen him twice a week the whole time she was seeing Tove. She came in here and said I hadn't seen him in four months, and got very agitated when I pointed out the inconsistency in what she told Detective Barbee.
>
> Ask yourself why, why would she change her story? Why did she alter her story? I submit to you that she altered her story in many respects to fit this theme, this theory that Tove acted out of some jealous rage.

(Tr. Vol. 4, at 813-15, Doc. 12-2, at 819-21).

Therefore, even assuming *arguendo* any Confrontation Clause error in the trial court's exclusion of the extrinsic evidence of a prior inconsistent statement, such error was harmless, that is, it did not have a "substantial and injurious effect or influence in determining the jury's verdict". *Brecht*, 507 U.S. at 631. Ground Three should thus be denied.

Ground Two Fails on the Merits

In Ground Two, Petitioner asserts ineffective assistance of trial counsel for (1) failing to request a limiting instruction explaining the limited purpose for which other acts evidence could be considered; (2) failing to object when no such instruction was given; and (3) failing to object to

the prosecutor's inappropriate arguments in closing. *See* Doc. 1, at 7, 20-21. He raised this claim through all levels of the Ohio courts and it is thus preserved for federal habeas review. *See* Ex. 17, Doc. 12-1, at 111-15; Ex. 23, Doc. 12-1, at 233-34. However, the undersigned agrees with Respondent that the state court decision was not contrary to, or an unreasonable application of federal law, and Petitioner is not entitled to habeas relief.

Obtaining relief on an ineffective assistance of counsel claim requires Petitioner to clear a doubly high hurdle. Ineffective assistance of counsel claims are first governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "In *Strickland,* [the Supreme] Court made clear that 'the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation . . . [but] simply to ensure that criminal defendants receive a fair trial.'" *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 689) (second alteration in original). "Thus, '[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Id.* (quoting *Strickland*, 466 U.S. at 686) (alteration and emphasis in *Cullen*)).

The Supreme Court in *Strickland* recognized the "tempt[ation] for a defendant to second-guess counsel's assistance or adverse sentence," 466 U.S. at 689, and therefore established that counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *id.* at 690, and imposed a two-prong framework for a defendant to overcome this strong presumption. Under *Strickland*'s first prong, Petitioner must demonstrate that "counsel's representation was deficient in that it 'fell below an objective standard of reasonableness.'" *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005) (quoting *Strickland*, 466 U.S. at 688). In assessing whether counsel's performance was

deficient, this Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and Petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citation and quotation marks omitted). "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

Decisions as to what evidence to present, whether to call certain witnesses, and how to conduct cross-examination are presumed to be a matter of trial strategy, and the failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *See Chegwidden v. Kapture,* 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell,* 303 F.3d 720, 749 (6th Cir. 2002). In sum, when making all strategic decisions, counsel's conduct must be reasonable. *See Roe v. Flores–Ortega,* 528 U.S. 470, 481 (2000); *see also Wiggins v. Smith,* 539 U.S. 510, 522–23 (2003).

Further, it is not enough to show only that counsel's performance was deficient. *Strickland*'s second prong requires Petitioner to show "prejudice," that is, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112 (citation omitted). And "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* at 104 (quoting *Strickland*, 466 U.S. at 687).

Layered on top of this, the standard on habeas review further "severely constrains" the Court's analysis. *Smith v. Anderson*, 632 F.3d 277, 281 (6th Cir. 2011). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky,* 559 U.S. 356, 371 (2010). "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." *Harrington*, 562 U.S. at 105. And "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Id.* Because § 2254(d)(1) of AEDPA limits the circumstances in which federal courts may grant a writ of habeas corpus, the Supreme Court has described habeas review of state court adjudications of ineffective assistance of counsel claims as "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable, the state court's decision must have been more than incorrect or erroneous . . . The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520 (citations omitted).

In short, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is *any reasonable argument* that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105 (emphasis added); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013) ("This 'doubly deferential' standard of review . . . gives both the state court and the defense attorney the benefit of the doubt.") (internal citation omitted); *Davis v. Carpenter*, 798 F.3d 468, 473 (6th Cir. 2015) ("The question before us is whether any 'fairminded

jurist' could agree with the state courts that [trial counsel] satisfied the reasonableness standard set forth in *Strickland*.") (quoting *Harrington*, 562 U.S. at 101).[4]

The *Strickland* reasonableness standard "is a general one, governing a great blue-water of attorney conduct" and "[t]he Supreme Court has charted only parts of that expanse." *Davis v. Carpenter*, 798 F.3d 468, 473 (6th Cir. 2015). In other cases, state courts "[find] themselves in open water" where "[t]he only buoy in sight, far off in the horizon, [is] the Court's guidance in *Strickland* itself that counsel's efforts must be within 'the wide range of reasonable professional assistance[.]'" *Id.* (quoting *Strickland*, 466 U.S. at 689). "That rule is as general as they come. And '[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" *Id.* at 473-74 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

It is pursuant to this "imposing standard", *Caudill v. Conover*, 881 F.3d 454, 462 (6th Cir. 2018), that this Court reviews Petitioner's claims. To the state courts (and now to this Court) Petitioner argued his trial counsel was ineffective for: (1) failing to request a limiting instruction explaining the limited purpose for which other acts evidence could be considered; (2) failing to object when no such instruction was given; and (3) failing to object to the prosecutor's inappropriate and inaccurate statements in closing. *See* Ex. 17, Doc. 12-1, at 111-13; *see also* Ex.

---

4. As then-District Court Judge (now Sixth Circuit Court Judge) Amul R. Thapar described this doubly deferential standard:

> Imagine every judge in the country picked up the state-court decision and that each of them is reasonable. If none could possibly disagree that the state court had misapplied Supreme Court law, the decision is unreasonable. Then, and only then, does a petitioner have a claim under AEDPA's third prong. But if some of those judges *could* disagree—in other words, if some could find the state court's reasoning reasonable—the petition[er] does not have a claim.

*Sanders v. White*, 2017 WL 2129305, at *2 (E.D. Ky.) (emphasis in original).

23, Doc. 233-34. On direct appeal, the Ninth District Court of Appeals cited the relevant *Strickland*

standard and found no merit to this claim:

> {¶ 36} In order to prevail on a claim of ineffective assistance of counsel, Adams "must establish (1) that his counsel's performance was deficient to the extent that 'counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment' and (2) that but for his counsel's deficient performance the result of the trial would have been different." *State v. Velez*, 9th Dist. Lorain No.13CA010518, 2015–Ohio–642, ¶ 18, quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This court need not address both prongs of the *Strickland* test if it should find Adams failed to prove either prong. *State v. Ray*, 9th Dist. Summit No. 22459, 2005–Ohio–4941, ¶ 10. A trial counsel's performance will not be deemed ineffective unless it falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), at paragraph two of the syllabus. Further, there exists a strong presumption of the adequacy of counsel's performance and that counsel's actions were sound trial tactics. *State v. Hoehn*, 9th Dist. Medina No. 03CA0076–M, 2004–Ohio–1419, ¶ 45. Moreover, "debatable trial tactics do not give rise to a claim of ineffective assistance of counsel." *Id.*, citing *State v. Clayton*, 62 Ohio St.2d 45, 49 (1980).

> {¶ 37} Adams argues that his trial counsel's failure to request a limiting instruction, failure to object to the trial court's failure to provide a limiting instruction, failure to object to statements made by the prosecution during closing arguments combine to show "that there was no adversarial process in this trial." However, "[t]his Court has held that 'the decision not to request a limiting instruction is a matter of trial strategy and does not establish ineffective assistance of counsel." *State v. Bradford*, 9th Dist. Summit No. 22441, 2005–Ohio–5804, ¶ 28, quoting *State v. Fields*, 9th Dist. Wayne No. 99CA0062, 2000 WL 1124071, *7 (Aug. 9, 2000). Additionally, "this Court has consistently held that 'trial counsel's failure to make objections falls within the realm of trial tactics and does not establish ineffective assistance of counsel.' " *Id.* at ¶ 27, quoting State *v. Taylor*, 9th Dist. Lorain No. 01CA007945, 2002–Ohio–6992, ¶ 76. "Strategic trial decisions are left to the deference of trial counsel and are not to be second-guessed by appellate courts." *State v. Hairston*, 9th Dist. Lorain No. 05CA008768, 2006–Ohio–4925, ¶ 14, citing *State v. Carter*, 72 Ohio St.3d 545, 558 (1995).

> {¶ 38} After careful review of the record, we conclude that Adams has failed to meet his burden of establishing that trial counsel's failure to request a limiting instruction and failures to object amounted to ineffective assistance of counsel.

*Adams*, 2017 WL 1227037, at *8-9.

Earlier in its opinion, evaluating Petitioner's related claims of admission of prior bad acts evidence and the trial court's failure to issue a limiting instruction, the court described the testimony at issue:

> {¶ 8} In this case, Adams contends that his ex-girlfriend's testimony constitutes inadmissible other acts evidence. Specifically, his ex-girlfriend, S.C., testified about an incident that occurred between herself and Adams a few days before the shooting death of Mr. Coats. In her testimony, S.C. stated that she and Adams had an argument about her relationship with Mr. Coats and that Adams had grabbed her by her head and dragged her up the stairs in front of her daughter. As a result, S.C.'s daughter ran out of the house and asked a neighbor to call 9–1–1. S.C. stated that after Adams dragged her up the stairs, "he sat me on my bed and choked me and choked me and choked me." She further stated that she eventually passed out and now has a scar on her neck from the incident.

> {¶ 9} Adams argues that the other acts evidence presented in S.C.'s testimony suggested that he was violent toward S.C., had violent reactions whenever Mr. Coats was mentioned, and that he was a bad person. The trial court, however, overruled Adams' objection to the above testimony, determining that the testimony was admissible both to show intent and purpose because the testimony supported the prosecution's argument that Adams acted on his anger toward Mr. Coats, as well as to show that the incident was not an accident. Specifically, the trial court determined that S.C.'s testimony showed why Adams "was out to get" Mr. Coats and "that he had strong feelings about" Mr. Coats. The trial court further determined that the probative value of this information outweighed its prejudicial nature.

*Id.* at *2. After finding that the trial court did not abuse its discretion in allowing the testimony, the court turned to Petitioner's claim that the trial court should have given a limiting instruction. Noting that Petitioner had not requested such an instruction, the Court applied plain error review to the claim, finding no error demonstrating "a manifest miscarriage of justice." *Id.* at *4. The court further noted:

> Moreover, although an instruction limiting the use of evidence was not given to the jury, we note that the trial court did admonish the jury with regard to other prior acts of Adams, stating that they could only be used for a limited purpose and that the jury was not to consider them to prove Adams' character or that he acted in conformity with that character.

*Id.*

Upon review, the undersigned finds the state court's decision that failure to request a limiting instruction was not ineffective assistance of counsel is not contrary to, or an unreasonable application of, federal law. As another court in this district explained: "evidence of [Petitioner's prior bad acts] was not the critical factor in the case against him." *Croce v. Miller*, 2017 WL 3394046, at *16 (N.D. Ohio), *report and recommendation adopted*, 2017 WL 3382665. And, indeed, limiting instructions "inevitably invite the jury's attention to matters the defendant normally prefers not to emphasize." *Ferguson v. Knight*, 809 F.2d 1239, 1243 (6th Cir. 1987). Thus, the undersigned finds that the state appellate court reasonably concluded, pursuant to *Strickland*, that counsel's failure to request a limiting instruction regarding this prior bad acts evidence, was not ineffective assistance of counsel. The state appellate court noted that decisions to request a limiting instruction are matters of trial strategy. Adams, 2017 WL 1227037, at *8. Moreover, even assuming *arguendo* that counsel's decision not to request a limiting instruction rose to the level of deficient performance, Petitioner has failed to show a reasonable probability that, but for the lack of limiting instruction, the outcome of the trial would have been different. *See Henderson v. Kibbe*, 431 U.S. 145, 155 (1977) ("An omission, or an incomplete instruction is less likely to be prejudicial than a misstatement of the law."); *Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1079 (6th Cir. 2015) (this "comports with recent holdings by the Supreme Court and [the Sixth Circuit] establishing that a defense counsel's failure to request—or a trial court's failure to give—even an appropriate limiting instruction will not require reversal where other evidence in the record supports conviction"). This is further supported by the state court's observation that the trial court "did admonish the jury with regard to other prior acts of Adams". *Adams*, 2017 WL 1227037, at *4.

The same is true for the state court decision finding no ineffective assistance of counsel from failure to object to the prosecutor's alleged improper comments in closing argument. Even assuming the prosecutor's remarks were improper, "the pertinent question is whether counsel's failure to object was both objectively unreasonable and prejudicial." *Schauer v. McKee*, 401 F. App'x 97, 101 (6th Cir. 2010). "[N]ot drawing attention to [a] statement may be perfectly sound from a tactical standpoint." *United States v. Caver,* 470 F.3d 220, 244 (6th Cir. 2006). To breach the unreasonableness threshold, "defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice." *Lundgren v. Mitchell,* 440 F.3d 754, 774–75 (6th Cir. 2006). Conversely, "any single failure to object [to closing arguments] usually cannot be said to have been error." *Id.* at 774; *see also Smith v. Bradshaw,* 591 F.3d 517, 522 (6th Cir. 2010) (finding that defense counsel's failure to object to one instance of alleged prosecutorial misconduct was not deficient). The state court decision finding no violation of *Strickland* as a result of counsel's failure to object is not an unreasonable one.

Ultimately, "[t]he question before [the Court] is whether any 'fairminded jurist' could agree with the state courts that [trial counsel] satisfied the reasonableness standard set forth in *Strickland.*" *Davis*, 798 F.3d at 473 (quoting *Harrington*, 562 U.S. at 101). Fairminded jurists could do so here. As such Ground Two should be denied.

Ground Four: Non-Cognizable Claim

In Ground Four, Petitioner alleges cumulative errors at trial deprived him of due process. He claims that "[t]he State lacked evidence . . . as well as withheld evidence from the Defendant

and has the evidence been available . . . the outcome would [have] been different." (Doc. 1, at 10).[5] But he does not elaborate. This Court must reject this claim because the Supreme Court has never held that cumulative errors may form the basis for issuance of a writ of habeas corpus. *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) ("[T]he law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue."); *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). Therefore "cumulative error" cannot be "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States". 28 U.S.C. § 2254(d). Petitioner's cumulative error claim, therefore, is not cognizable on habeas corpus review. *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)).

## CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the Court recommends the Petition be DENIED.

s/ James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

---

5. To the extent Petitioner attempts to raise a separate claim in Ground Four here regarding the evidence, such a claim would be procedurally defaulted for failure to raise it to the Ohio state courts. *See Williams*, 460 F.3d at 806.